**Opinion issued December 19, 2017**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-16-00566-CR

_____

## KIMBERLY NICOLE CORMIER, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 339th District Court**
**Harris County, Texas**
**Trial Court Case No. 1441115**

---

# O P I N I O N

In December 2014, Kimberly Nicole Cormier was charged with capital murder arising out of her participation in an aggravated robbery that resulted in the Jose Bonilla's death. A jury found her guilty of the offense as charged. *See* TEX. PENAL CODE §§ 19.02, 19.03. The State did not seek the death penalty, and thus the

trial court automatically assessed punishment at life imprisonment without the possibility of parole. *See* TEX. PENAL CODE § 12.31(a)(2).

On appeal, Cormier contends that (1) the trial court erred in refusing to instruct the jury on the definition of "imminent" as it applies to the affirmative defense of duress; and (2) Section 12.31(a)(2) of the Texas Penal Code, which requires a punishment of life without parole for a defendant 18 years of age or older found guilty of a capital offense, is constitutionally infirm on its face and as applied to Cormier because it violates her right to be free from cruel or unusual punishment guaranteed by Article I, Section 13, of the Texas Constitution as well as her right to be free from cruel and unusual punishment guaranteed by the Eighth Amendment of the federal Constitution. We affirm.

## BACKGROUND

Cormier met James Nicholas in February 2014. The two began a romantic relationship. Cormier described Nicholas as kind and attentive at first, but as time went on, he became controlling and abusive.

Both Cormier and Nicholas had criminal histories. Nicholas was on parole, having recently been released from prison after being incarcerated for felony delivery of cocaine and unlawful possession of a firearm. Cormier had served six months for forging a prescription in 2006 and later served four years for obtaining

2

drugs by fraud in 2010. She was using prescription pain medication when she met Nicholas.

In September 2014, Nicholas began a week-long crime spree that included the murders of Johnny Holcombe, Catherine Gingrich, Marty Carol, and Jose Bonilla, and the aggravated robbery of a cell-phone store. Cormier accompanied Nicholas during these events.

Nicholas began to worry that law-enforcement officials would identify his car in connection with the murders and the store robbery. He and Cormier visited several used-car lots to attempt to steal a car, but the opportunity to take one did not arise. Following these unsuccessful efforts, their conversation turned to Bonilla. Bonilla was an acquaintance of Cormier. Bonilla managed a business that bought, sold, and repaired cars. He ran the business out of his home and had outfitted the home with surveillance cameras for security purposes. The cameras recorded video, but not audio.

Cormier and Nicholas visited Bonilla the evening of September 7th. They inspected the cars that Bonilla had available and expressed an interest in buying one of them. They made arrangements to return in the morning.

The surveillance video recording from that morning shows Cormier greeting Bonilla. She is fluent in Spanish and appeared to take the lead in negotiations.

3

Nicholas took one of Bonilla's cars on a test drive around the neighborhood while Bonilla and Cormier conversed outside of Bonilla's home.

A few minutes later, Nicholas returned from the test drive and the three went inside Bonilla's home. While Cormier and Bonilla were discussing paperwork in Bonilla's kitchen, Nicholas pulled a gun from the back of his waistband and put it to Bonilla's head. Nicholas handed Cormier some plastic zip-ties and, still holding the gun to Bonilla's head, directed Bonilla into the living room. Nicholas had Bonilla sit on the sofa while Cormier spoke to him. The surveillance video shows Cormier speaking to Bonilla in an aggressive manner. After a few minutes, Nicholas lunged toward the sofa, picked up a throw pillow, held it to the side of Bonilla's head, and placed the gun on the other side of the pillow. Bonilla removed an object from his pocket and gave it to Nicholas. Nicholas and Cormier then forced Bonilla into his bedroom, which was not within view of the surveillance cameras.

The surveillance video shows Cormier and Nicholas leaving the bedroom a few minutes later. Nicholas returned the throw pillow to the sofa. Cormier looked out of the front-door peephole while she covered her hand with the bottom edge of her tee shirt and wiped off the doorknob. They left the house and drove away in Bonilla's car.

That afternoon, Bonilla's roommate returned home from work to find Bonilla dead in his bedroom. He had a single gunshot wound on the right side of his head.

4

His ankles and feet were tied together with zip ties. A spent shell casing was on the floor near his feet.

Three days after Bonilla's murder, the police found Nicholas and Cormier leaving Cormier's neighborhood in Bonilla's car. Nicholas, who was driving, tried to flee from the police and shot at the police vehicle. Before he could be arrested, he shot Cormier on her left side and shot himself in the head. An officer ordered Cormier out of the car and onto the ground. Nicholas died at the scene. Cormier survived her injuries.

At trial, Cormier acknowledged that she was present at the murders of Holcombe, Gingrich, Carol, and Bonilla, and that she had driven the get-away car from the cell-phone store where Nicholas had committed aggravated robbery. She claimed, however, that she acted in fear for her life. She testified that Nicholas had pointed his gun at her and told her that he would kill her if she told the police about his crimes.

Defense witness Toby Myers, an expert in domestic violence, opined that Cormier was terrified of Nicholas to the point of believing that she would not survive if she escaped him. He further opined that Cormier would not have been with Nicholas if she felt she had a choice. Cormier conceded, though, that she never attempted to flee from Nicholas or warn Bonilla. She acknowledged that the police

confiscated an air pistol, a knife, and Gingrich's identification from her purse. She

also conceded that she had lied to the police about her involvement in the crimes.

After the close of evidence, the trial court prepared a jury charge that included

Cormier's affirmative defense of duress, defined as follows:

> It is an affirmative defense to prosecution for any offense that the person charged engaged in the proscribed conduct because she was compelled to do so by the threat of imminent death or serious bodily injury to herself or another. Such compulsion exists only if the force or threat of force would render a person of reasonable firmness incapable of resisting the pressure.

> The defense of duress is unavailable if the defendant intentionally, knowingly, or recklessly placed herself in a situation in which it was probable that she would be subjected to compulsion.

Cormier asked the trial court to add the following definition:

> The word "imminent," for purposes of determining duress, has been defined by courts to mean "near at hand; mediate rather than immediate; close rather than touching; on the point of happening; threatening; menacing; or perilous."

The trial court refused the requested instruction.

## DISCUSSION

Cormier challenges the trial court's charge to the jury, contending that the

charge should have contained a definition for the word "imminent" in connection

with her defense that she was under duress when she participated in Bonilla's

murder. She further challenges the imposition of life imprisonment without the

possibility of parole as constitutionally infirm because it is automatic and does not

6

allow a jury to consider circumstances that might mitigate the term of confinement, and in particular, eliminates the possibility of parole.

## I. The trial court was not required to submit a definition of "imminent."

Cormier contends that the trial court erred in refusing to include her tendered definition of "imminent" because it contains language that draws a distinction between "imminent" and "immediate."

### A. Standard of review and applicable law

The trial court must deliver to the jury a written charge distinctly setting forth the law applicable to the case. TEX. CODE CRIM. PROC. art. 36.14. The "law applicable to the case" includes the statutory definitions that affect the meaning of the elements of the offense. *Ouellette v. State*, 353 S.W.3d 868, 870 (Tex. Crim. App. 2011); *Lovings v. State*, 376 S.W.3d 328, 337 (Tex. App.—Houston [14th Dist.] 2012, no pet.). If the applicable statute defines a phrase, term, or word that the jury must use to properly resolve an issue, the trial court has no discretion; it must submit that definition to the jury. *See Arline v. State*, 721 S.W.2d 348, 352 n.4 (Tex. Crim. App. 1986); *see also State v. Kurtz*, 152 S.W.3d 72, 81 (Tex. Crim. App. 2004) ("A trial court has no discretion in determining what the law is or applying the law to the facts.").

A defendant who properly requests that a defensive theory raised by the evidence be submitted to jury is entitled to an instruction on that theory. *Booth v.*

7

*State*, 679 S.W.2d 498, 500 (Tex. Crim. App. 1984); *see also Shaw v. State*, 243 S.W.3d 647, 658 (Tex. Crim. App. 2007).

In submitting a defensive theory, trial courts have broad discretion in submitting proper definitions and explanatory phrases to aid the jury. *Nava v. State*, 379 S.W.3d 396, 420 (Tex. App.—Houston [14th Dist.] 2012), *aff'd*, 415 S.W.3d 289 (Tex. Crim. App. 2013). When submitting defensive theories, however, the trial court must do so correctly. *Vega v. State*, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013) (holding that when a trial court "charge[s] on a defensive issue (regardless of whether [it] does so *sua sponte* or upon a party's request), but fails to do so correctly, this is charge error subject to review"). If, as here, the accused makes a timely and pertinent objection at trial, reversal is required if the accused suffered "some harm" from the error. *Vega*, 394 S.W.3d at 519.

Duress is an affirmative defense that applies if the defendant "engaged in the proscribed conduct because he was compelled to do so by threat of imminent death or serious bodily injury to himself or another." TEX. PENAL CODE § 8.05(a). Compulsion means a force or threat of force that "would render a person of reasonable firmness incapable of resisting the pressure." *Id.* § 8.05(c).

In this case, the statute does not define "imminent." Because it does not, ordinarily the jury charge does not require a specific instruction. *Smith v. State*, 297 S.W.3d 260, 275 (Tex. Crim. App. 2009). Rather, jurors are presumed to apply a

common understanding to the meaning of these terms. *See id.* But terms with a technical legal meaning may require definition even when the term is not defined in a statute "when there is a risk that jurors may arbitrarily apply their own personal definitions of the term or when a definition of a term is required to assure a fair understanding of the evidence." *Nava*, 379 S.W.3d at 420 (citing *Middleton v. State*, 125 S.W.3d 450, 454 (Tex. Crim. App. 2003)). Cormier contends that the trial court erred in refusing to define "imminent" for the jury because it has a known and established legal meaning in the context of a duress defense. We thus turn to the question whether "imminent" required a legal definition.

## B.    Analysis

Even outside the context of a duress defense, the Penal Code does not define "imminent." *See* TEX. PENAL CODE § 1.07. Courts have employed various definitions for the term in deciding whether the evidence is sufficient to support a conviction in the face of a defense of duress. An imminent threat is a present threat of harm. *Anguish v. State*, 991 S.W.2d 883, 886 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd). It has two components: (1) the person making the threat must intend and be prepared to carry out the threat immediately, and (2) the threat must be predicated on the threatened person's failure to commit the charged offense immediately. *See Devine v. State*, 786 S.W.2d 268, 270–71 (Tex. Crim. App. 1989);

9

*Anguish*, 991 S.W.2d at 886. Threats of future harm are not sufficient to prove duress. *Devine*, 786 S.W.2d at 270–71.

Cormier points to the Court of Criminal Appeals's decision in *Devine*, which reviewed the sufficiency of the evidence supporting a jury verdict finding the appellant guilty of robbery. In that case, the Court provided a definition of "imminent," citing Black's Law Dictionary. *See id.* at 270 (citing *Imminent*, BLACK'S LAW DICTIONARY (5th ed. 1979)); *see also Garcia v. State*, 367 S.W.3d 683, 688–89 (Tex. Crim. App. 2012). Cormier's tendered instruction is the definition that the Court used in *Devine*, meaning "near at hand; mediate rather than immediate; close rather than touching; on the point of happening; threatening; menacing; perilous." *See* 786 S.W.2d at 270.

Though the Court in *Devine* supplied a definition in the context of evaluating the sufficiency of the evidence, it did not supplant the Legislature's authority to define "imminent" for the purpose of instructing a jury on duress or require that juries be given a specific definition. An appellate court's application of a definition to a statutorily undefined term in reviewing the sufficiency of the evidence does not in turn dictate that a trial court must define that term for the jury when the statute does not. *Nava*, 379 S.W.3d at 420 (citing *Kirsch v. State*, 357 S.W.3d 645, 651 (Tex. Crim. App. 2012)). Neither *Devine* nor *Garcia* suggests that "imminent" should have been defined in the jury charge, and Cormier points us to no case

10

holding that a trial court erred in refusing to submit a definition. Neither case concerns the affirmative defense of duress. *See Garcia*, 367 S.W.3d at 688–89 (appeal of conviction for endangering child); *Devine*, 786 S.W.2d at 269 (appeal of robbery conviction).

The Legislature uses "imminent" in varied contexts throughout the Penal Code.[1] The widespread use of the term, without definition, undermines Cormier's

---

[1] *See, e.g.*, TEX. PENAL CODE § 9.22(1) (in justification defense of necessity, "[c]onduct is justified if: the actor reasonably believes the conduct is immediately necessary to avoid imminent harm"); *id.* § 22.01(a)(2) (person commits assault if person "intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse"); *id.* § 22.041(c) (person commits offense of abandoning or endangering child "if he intentionally, knowingly, recklessly, or with criminal negligence, by act or omission, engages in conduct that places a child younger than 15 years in imminent danger of death, bodily injury, or physical or mental impairment"); *id.* § 22.07(a)(2) (person commits terroristic threat by threatening to commit violent offense with intent to place person in fear of imminent serious bodily injury); *id.* § 29.02(a)(2) (person commits robbery if in course of committing theft he "intentionally or knowingly threatens or places another in fear of imminent bodily injury or death"); *id.* § 29.03(a)(3) (robbery becomes aggravated robbery if robber causes bodily injury to another or threatens or places elderly or disabled person in fear of imminent bodily injury or death); *id.* § 38.15(e) (defining, for purposes of statute prohibiting interference with public duties, "emergency" as "a condition or circumstance in which an individual is or is reasonably believed by the person transmitting the communication to be in imminent danger of serious bodily injury or in which property is or is reasonably believed by the person transmitting the communication to be in imminent danger of damage or destruction"); *id.* § 42.06(a)(2) (person commits offense of false alarm or report if, among other things, "he knowingly initiates, communicates or circulates a report of a present, past, or future bombing, fire, offense, or other emergency that he knows is false or baseless and that would ordinarily: . . . place a person in fear of imminent serious bodily injury"); *id.* § 71.022(a-1)(1) (person commits offense if, with intent to coerce, induce, or solicit a child to actively participate in the activities

11

position that a specific, technical definition of "imminent" applies to the duress defense. *See Bryant v. State*, 905 S.W.2d 457, 459 (Tex. App.—Waco 1995, pet. ref'd) (applying definition of "imminent" used in *Devine* to review sufficiency of evidence in appeal of conviction for terroristic threat while observing that Legislature did not manifest any intent for "imminent" to have one meaning in Section 29.02 (robbery) and different meaning in Section 22.07 (terroristic threats)).

Both the lack of a definition for "imminent" in the Penal Code and the Code's frequent use of "imminent" as an undefined modifier support the conclusion that "imminent" has a common meaning. Because of the word's common use, we hold that the trial court acted within its broad discretion in refusing to submit the tendered definition. *See Nava*, 379 S.W.3d at 420.

## II. Cormier's punishment does not violate constitutional guarantees against cruel and unusual punishment.

Cormier challenges the constitutionality of life imprisonment without parole for persons convicted as a party to capital murder. She claims that Section 12.31(a)(2) of the Penal Code, on its face, violates her right to be free from cruel or unusual punishment guaranteed by Article I, Section 13, of the Texas Constitution as well as her right to be free from cruel and unusual punishment guaranteed by the

---

of a criminal street gang, the person "threatens the child or a member of the child's family with imminent bodily injury"). None of these provisions defines "imminent."

12

Eighth Amendment of the United States Constitution. She contends that, by mandating life in prison without the possibility of parole for capital murder, the statute prohibits individualized consideration of mitigating evidence necessary for determining a just punishment. She observes that the application of Section 12.31(a)(2) to her case violates those constitutional rights because the statute does not allow for consideration as mitigating factors that she was convicted under the law of parties and that she acted under duress.

Before considering her challenges on the merits, we first address Cormier's suggestion that the Texas Constitution, which prohibits "cruel or unusual punishment" provides greater protection than the United States Constitution's prohibition against "cruel and unusual punishment." *Compare* TEX. CONST. art. I, § 13, *with* U.S. CONST. amend. VIII. The Court of Criminal Appeals has rejected such a distinction. *See Cantu v. State*, 939 S.W.2d 627, 645 (Tex. Crim. App. 1997) (finding no significance in differences between Eighth Amendment's "cruel and unusual" phrasing and Texas Constitution's "cruel or unusual" phrasing); *Duran v. State*, 363 S.W.3d 719, 723 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (following *Cantu*). Thus, we review Cormier's state and federal constitutional claims together.

**A.** **Cormier does not overcome the presumption that Section 12.31(a)(2) is constitutional on its face.**

We review the facial constitutionality of a criminal statute de novo. *Salinas v. State*, 464 S.W.3d 363, 366 (Tex. Crim. App. 2015) (relying on *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013)). We presume the statute is valid and that the Legislature did not act arbitrarily or unreasonably in enacting it. *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002). The challenging party bears the burden to show that no set of circumstances exists under which the statute would be constitutionally valid. *State v. Rosseau*, 396 S.W.3d 550, 557 (Tex. Crim. App. 2013). We analyze a facial challenge without regard to the specific facts of the case. *Ex parte Lo*, 424 S.W.3d at 14 n.2.

In arguing that the statute violates the Eighth Amendment, Cormier asks us to extend the holding of *Miller v. Alabama*, 567 U.S. 460 (2012). There, the United States Supreme Court determined that the Eighth Amendment prohibits the imposition of mandatory life imprisonment without the possibility of parole with respect to juveniles under the age of 18. *Id.* at 489. Cormier asks that we apply the analysis in *Miller* to adults.

The United States Supreme Court, however, has rejected this application. In *Harmelin v. Michigan*, 501 U.S. 957 (1991), the Court considered the propriety of mandatory life imprisonment without parole for possessing more than 650 grams of cocaine. *Id.* at 995, 1002. Refusing to extend an individualized punishment

14

requirement beyond the death-penalty context, it held that the imposition of mandatory life imprisonment without the possibility of parole did not violate the Eighth Amendment's protection against cruel and unusual punishment. *See id.* at 995–96. In deciding *Miller*, the Court limited its holding to cases involving juvenile offenders and declared that it "neither overrules nor undermines nor conflicts with *Harmelin*." 567 U.S. at 480–82; *see also Lopez v. State*, 493 S.W.3d 126, 139 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (addressing *Miller*'s language and concluding that *Miller* did not alter *Harmelin*).

Multiple courts, including this one, thus have continued to follow *Harmelin*, holding that the Eighth Amendment does not guarantee that adult defendants, like their juvenile counterparts, must receive an individualized punishment hearing when given an automatic punishment of life without the possibility of parole for capital murder. *See, e.g.*, *Turner v. State*, 443 S.W.3d 128, 129 (Tex. Crim. App. 2014) (per curiam); *Lopez*, 493 S.W.3d at 139; *Duran*, 363 S.W.3d at 723; *Lewis v. State*, 448 S.W.3d 138, 146–47 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). Under these precedents, mandatory life imprisonment of an adult defendant does not violate constitutional protections against cruel and unusual punishment. Cormier's challenge provides no basis for distinguishing these precedents from her case. Thus, we hold that Cormier has failed to overcome the presumption of constitutionality that applies to Section 12.31(a)(2).

**B.** **The application of Section 12.31(a)(2) to Cormier does not violate the constitutional prohibition against cruel and unusual punishment.**

Alternatively, Cormier contends that Section 12.31(a)(2) is unconstitutional as applied to her case. *See State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 910 (Tex. Crim. App. 2011). A statute may be valid as applied to one set of facts and invalid as applied to a different set of facts. *Id.* To prevail in this challenge, Cormier must show that Section 12.31(a)(2) yields an unconstitutional result when it is applied to the facts and circumstances of this case. *See id.*; *see also Ploeger v. State*, 189 S.W.3d 799, 813 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

According to Cormier, Section 12.31(a)(2) prevented consideration of two significant mitigating circumstances in her case: (1) her participation merely as a party to the murder, and not as the primary actor, and (2) the evidence supporting her duress defense, including her history of prescription drug abuse and as a victim of domestic violence. This Court has rejected a claim that the mandatory life imprisonment required under Section 12.31(a) of the Texas Penal Code is a cruel and unusual punishment under the Eighth Amendment when a defendant has been convicted as a party to capital murder and not as the primary actor. *See Cienfuegos v. State*, 113 S.W.3d 481, 496 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd).

Cormier's claim that the mandatory automatic punishment does not allow for consideration of her mitigating circumstances is similarly unavailing. Texas courts

16

have overruled constitutional challenges to Section 12.31(a)(2) based on other arguably compelling mitigating circumstances. *See, e.g.*, *Modarresi v. State*, 488 S.W.3d 455, 465–67 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (defendant claimed that she suffered from mental illness, particularly postpartum depression). Further, the Court of Criminal Appeals, in applying *Miller*, has held that juvenile offenders who had been imprisoned for life without parole were not entitled to have individualized punishment hearings after *Miller* but were entitled instead only to automatic modification of their punishment from life without parole to life with the possibility of parole. *Turner*, 443 S.W.3d at 129. Accordingly, we hold that Cormier has not demonstrated that Section 12.31(a)(2) is unconstitutional as applied to her case. We reject Cormier's challenge that her punishment, as applied to the facts of her case, amounts to a violation of the state and federal constitutions.

## CONCLUSION

We affirm the judgment of the trial court.


Jane Bland
Justice

Panel consists of Justices Jennings, Bland, and Brown.

Publish. TEX. R. APP. P. 47.2(b).

17