**AFFIRMED as Modified; Opinion Filed February 24, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-19-00215-CR

**ZSERON DONTE DUKES, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 195th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1747055-N**

# MEMORANDUM OPINION

Before Justices Myers, Schenck, and Carlyle
Opinion by Justice Schenck

Zseron Donte Dukes appeals his conviction for evading arrest. In six issues, appellant challenges the jury's rejection of his duress defense, his sentencing, the trial court's neutrality, and a recitation in the judgment. We affirm the judgment as modified by this opinion. Because all issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

### BACKGROUND

On the evening of February 10, 2017, appellant and his friend Gary Grayson drove around trying to meet women using an application called "Plenty of Fish." Appellant drove while Grayson rode in the front passenger seat. As they were driving around, they happened to drive through a neighborhood in Rowlett in which appellant's former girlfriend lived. As they drove past her home, one of the vehicle's occupants fired at least two shots at her home. Appellant's former

girlfriend suspected appellant was the shooter. She called 9-1-1 and advised the operator of her suspicion and gave a description of appellant and his vehicle.

Rowlett police officer Timothy Coykendall responded to the call. He was given the suspect's name and a description of his vehicle. Within four minutes, Officer Coykendall saw a vehicle matching the description given driving westbound on Interstate 30. He caught up with the vehicle at Gus Thomasson Road in Mesquite. Another Rowlett police officer, Michael Davison, was at appellant's former girlfriend's home at that time. Officer Davison communicated with Officer Coykendall and confirmed that the vehicle belonged to appellant.

Shortly thereafter, appellant increased the speed at which he was traveling to nearly 100 miles per hour. Officer Coykendall then activated his overhead emergency lights and sirens to conduct a traffic stop. Appellant did not stop, rather he continued to drive westbound on Interstate 30 and, around 10 seconds after Officer Coykendall activated his lights and sirens, an object was thrown from the vehicle's passenger window. Officers later retrieved pieces of a semiautomatic handgun on westbound Interstate 30 between Carroll and Munger streets.

After the gun was thrown from the vehicle, appellant continued to drive west on Interstate 30 and then took the Interstate 75 North exit and exited onto Main Street. He then drove north on Cesar Chavez Expressway and back onto Interstate 75. He then exited at Blackburn Street, made a left turn onto Blackburn, lost control of the vehicle, hit a curb and took out a street sign. The vehicle came to a stop and caught on fire. Officer Coykendall and at least two other officers drew their guns and gave commands to the occupants to get out of the vehicle. The occupants exited the vehicle and were taken into custody.

Appellant was indicted with one count of evading arrest, enhanced by a previous felony conviction, and one count of deadly conduct. Appellant pleaded not guilty to the charges and proceeded to a jury trial claiming Grayson was the shooter and that he acted under duress when he

fled from the police.[1]  The jury found appellant not guilty of deadly conduct, but guilty of evading arrest.  Appellant elected to have his punishment assessed by the trial court, hoping to be granted community supervision.  Appellant pleaded true to the enhancement paragraph.  Before pronouncing sentence, the trial court discussed the contents of a presentence investigation report ("PSI") and recounted appellant's criminal history, including his multiple violations of probation terms, and a prior conviction for evading arrest.  The trial court emphasized the seriousness of the offense, the fact that appellant put numerous people at risk by driving over 100 miles per hour, and appellant's history of repeating the offense.  The court sentenced appellant to 18 years' confinement.  This appeal followed.

**DISCUSSION**

### I.     Sufficiency of the Evidence

In his first and second issues, appellant urges there is legally and factually insufficient evidence to support the jury's rejection of his affirmative defense of duress.

We review affirmative defenses for both legal and factual sufficiency.  *Butcher v. State*, 454 S.W.3d 13, 20 (Tex. Crim. App. 2015).  In reviewing the legal-sufficiency of the evidence to support a jury's rejection of an affirmative defense in which the defendant has the burden of proof, we first look for evidence favorable to the jury's negative finding.  *Matlock v. State*, 392 S.W.3d 662, 670 (Tex. Crim. App. 2013).  When we review the record for favorable evidence, we disregard all contrary evidence unless a reasonable factfinder could not.  *Id.*  Only if the affirmative defense was conclusively proven may we conclude that the evidence is legally insufficient to support the jury's rejection of the affirmative defense.  *Id.*

In reviewing the factual sufficiency of the evidence to support a jury's rejection of an affirmative defense in which the defendant has the burden of proof, we review the evidence in a

---

[1] Appellant claimed Grayson demanded that he drive and he feared Grayson would shoot him if he did not succumb to his demands.

neutral light and determine whether the finding is so against the great weight and preponderance of the evidence so as to be manifestly unjust. *Id.* at 671. When conducting a review for legal or factual sufficiency, we defer to the factfinder's determination of the weight and credibility to give the testimony and the evidence presented at trial. *Id.* at 669–70.

Duress is an affirmative defense to prosecution that excuses the conduct of the accused that would otherwise expose him to criminal responsibility. TEX. PENAL CODE ANN. §§ 2.04(d), 8.05. To establish this affirmative defense, appellant was required to prove by a preponderance of the evidence that he committed the offense because he was compelled to do so by threat of imminent death or serious bodily injury to himself or another. *Id*. § 8.05(a). A threat is imminent when (1) the person making the threat intends and is prepared to carry out the threat immediately, and (2) the threat is predicated on the threatened person's failure to commit the charged offense immediately. *Bryant v. State*, No. 05-16-01448-CR, 2018 WL 2382104, at *4 (Tex. App.—Dallas May 25, 2018, no pet.) (mem. op., not designated for publication) (citing *Cormier v. State*, 540 S.W.3d 185, 190 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd)).

Appellant and Grayson were the only occupants of the vehicle and thus were the only persons who knew what transpired therein after the shots were filed. They both testified at trial and had conflicting stories as to who fired the gun, how the gun came to rest on Grayson's lap and who decided to dispose of it. Appellant claimed Grayson was the individual who fired the shots and then demanded that he keep driving. According to appellant, Grayson laid the gun on his lap with the barrel pointing toward the driver's side of the car. Appellant claimed he took the positioning of the gun to be a threat and that is why he did not stop for the police.[2] On cross-examination, appellant admitted that Grayson was not holding the gun and that he could have reached over and removed the gun from Grayson's lap had he chosen to do so. Grayson testified

---

[2] Appellant claimed Grayson rested the gun on his lap pointed in his direction.

that appellant was the shooter. He indicated that appellant hit the gas when he noticed the police behind them, then threw the gun onto his lap and told him to throw it out the window. Officer Coykendall established the gun was thrown from the car 10 seconds after he began his pursuit. The bulk of Officer Coykendall's pursuit occurred after the gun had been ejected from the vehicle.

The uncontroverted evidence established that had there been a credible threat, it no longer existed once Grayson threw the gun out of the window, which was mere seconds after Officer Coykendall activated his vehicles' emergency lights and sirens. Consequently, the record does not conclusively prove appellant's affirmative defense and the evidence is legally sufficient to support the jury's negative finding on the issue of duress. We overrule appellant's first issue.

Appellant urges that the jury's rejection of his duress defense was against the great weight of the evidence because the jury found appellant not guilty of deadly conduct, and thus, must have found Grayson's testimony to be not credible. Regardless of the jury's credibility determinations, appellant made no allegation that Grayson made an explicit threat to shoot him if he did not flee from the police and the undisputed evidence established appellant continued to flee of his own accord after the gun was ejected from the vehicle and only stopped when he lost control of his vehicle and crashed. Thus, the jury's rejection of appellant's claim of duress was not manifestly unjust and there is factually sufficient evidence to support the jury's finding. We overrule appellant's second issue.

## II. Judicial Bias

In his third through fifth issues, appellant asserts the trial court judge abused his discretion in considering another unrelated case in deciding the sentence he would impose and in doing so abandoned his role as a neutral and detached arbiter and deprived appellant of his right to due process under the Fourteenth Amendment of the United State Constitution and Article I, Section 19 of the Texas Constitution.

Due process requires a neutral and detached hearing body or officer. *Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006). A defendant has an absolute right to an impartial judge at both the guilt-innocence and punishment phases of trial. *Segovia v. State*, 543 S.W.3d 497, 503 (Tex. App.—Houston [14th Dist.] 2018, no pet.). Absent a clear showing of bias, a trial court's actions will be presumed to have been correct. *Brumit*, 206 S.W.3d at 645. To reverse a judgment on the ground of improper conduct or comments of the judge, we must be presented with proof (1) that judicial impropriety was in fact committed, and (2) of probable prejudice to the complaining party. *Id.* Judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. *Id.* Judges are not potted plants. *Sims v. State*, No. 05-18-00139-CR, 2018 WL 6333250, at *2 (Tex. App.—Dallas Nov. 29, 2018, no pet.) (mem. op., not designated for publication). Of course, best practice might suggest a judge should refrain from sharing his or her thoughts in many instances. Nevertheless, there is no requirement that a judge remain unmoved by the evidence presented or be fully silent in the face of it, especially when called upon to make a determination of the proper punishment based on the evidence presented.

The trial judge recounted appellant's criminal history and then turned to appellant's PSI, detailing, among other things, the reasons appellant failed to comply with terms of his various community supervisions. The trial judge noted that the interviewer stated that while appellant was out on bond for the current offense, he continued to acquire new charges as well as abuse drugs. The interviewer further noted that appellant's probation records showed appellant had substantial issues with compliance. The interviewer further commented, "It seems that Mr. Dukes believes his behavior is acceptable and he's become quite comfortable maintaining his anti-social values and following through with criminal cognitions. [Appellant] believes it's okay to tell a lie as he denies ever being written up for any behavioral issues while in custody, yet the jail records clearly

prove otherwise." The interviewer stated that appellant is a moderate risk for failure to be placed on probation and he seems to express significant criminal attitudes. The trial judge then stopped reviewing appellant's prior history and the PSI and linked appellant's prior conviction for evasion with the conviction for evasion in this case and stated:

> Those are very important to me because part of my job is to do what is right for you and for the public. And I have looked at where we've been in the last several years, and I am watching particularly evading arrest charges. Everybody is taking this as no big deal. The police turn on their lights, you step on it, which for the life of me I can't understand because in this date and time I don't know how in the world you would ever outrun a police officer . . . . But my point is [] that everybody seems to think that evading arrest is no big deal. There was one this last week, same set of circumstances, ended in the same result. The person evading arrest ended up crashing the car it burst into flames. The two people had to be cut out of that car, saved their lives.

It is apparent that the trial judge's reference to "where we've been in the last several years" reflects appellant's own conduct and history within the criminal justice system. The trial judge's statements about watching particularly evading arrest charges reflects the court's concern about appellant's repetitive and recidivist behavior. The trial judge simply used an example of an unrelated evasion case to import the seriousness of the offense for which appellant had been convicted and the risk to life his actions created. In fact, the trial judge stated

> And when I look back at that video, you put a lot of people in danger. You put a lot of citizens in danger and police officers who are trying to do their job and to stop this type of activity. That's a long way of saying, after I have reviewed all of this, Mr. Dukes, I'm not going to give you probation. There is no way I could live with my conscious if I did that – conscience, excuse me. And I have gone back over and I have calculated this every which way but loose. I don't think you're going to make it no matter what I do. So long story short, with the full range of punishment that I have, two to twenty years, I'm going to sentence you to eighteen years in the Texas Department of Corrections. That's going to be my sentence . . . . This stuff is going to stop.

Looking at the trial judge's comments in the context of the entire record, we conclude they do not reflect bias, partiality, or that the judge considered other's actions in fashioning appellant's punishment. Rather, the record reveals the trial judge spent considerable time reviewing

–7–

appellant's criminal history, probation history, and the PSI in reaching his decision not to grant appellant community supervision and to assess punishment at eighteen years' confinement, a time period within the statutory guidelines. Accordingly, we overrule appellants' third, fourth, and fifth issues.

## III.     Modification of judgment

In his sixth issue, appellant urges that this Court reform the judgment to reflect that the judge, not the jury, assessed punishment in this case.

We have the authority to modify the trial court's judgment to make the record speak the truth. TEX. R. APP. P. 43.2(b); *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992). We sustain appellant's sixth issue and modify the judgment to reflect the trial judge assessed punishment in this case.

## CONCLUSION

As modified, we affirm the trial court's judgment.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

DO NOT PUBLISH
TEX. R. APP. P. 47
190215F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ZSERON DONTE DUKES, Appellant

No. 05-19-00215-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 195th Judicial District Court, Dallas County, Texas
Trial Court Cause No. F-1747055-N.
Opinion delivered by Justice Schenck.
Justices Myers and Carlyle participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 24th day of February, 2020.