**AFFIRMED and Opinion Filed July 21, 2022**



**In The**
## Court of Appeals
## Fifth District of Texas at Dallas

**No. 05-21-00363-CR**

**RICKY L. JOHNSON, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 199th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 199-83409-2020**

## MEMORANDUM OPINION

Before Justices Schenck, Osborne, and Smith
Opinion by Justice Schenck

Appellant Ricky L. Johnson appeals his conviction for aggravated robbery. In three issues, appellant challenges the sufficiency of the evidence to support the jury's finding on the aggravated element of the charged offense, the jury's rejection of his affirmative defense of duress, and the sentence imposed against him. We affirm the trial court's judgment. Because all issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

BACKGROUND

Appellant was charged by indictment with aggravated robbery, a first-degree felony. TEX. PENAL CODE ANN. § 29.03. The indictment included enhancement provisions for appellant's prior convictions of unlawful possession with intent to deliver a controlled substance and aggravated assault with a deadly weapon. The charged offense was alleged to have occurred on October 12, 2019, at approximately noon at a family-owned pharmacy with appellant using or exhibiting a screwdriver and intentionally and knowingly threatening or placing the pharmacist in fear of imminent bodily injury or death. Appellant pleaded not guilty to the charged offense and "not true" to the enhancement paragraphs.

The State's witnesses during the guilt–innocence phase of trial were the complainant pharmacist and the apprehending officer, Officer Moses. Appellant testified on his own behalf and called the arresting officer, Officer Hogan, to establish he surrendered to the officers in a peaceful manner and that the officers did not investigate his claim he was compelled by threats to commit the offense.

The pharmacist testified at trial that she thought October 12, 2019, would be the day she was going to die. She recalled that on that day appellant entered the pharmacy where she works, feigned he was there to pick up a prescription, reached over and unlocked the swinging door that separates the pharmacy counter from the remainder of the store, and entered the area where she and a young female pharmacy technician were located. The pharmacist testified appellant then grabbed her by the

hair, held a screwdriver to her neck, and threatened several times to kill her if she did not hand over all the codeine in the store. The pharmacist indicated that she was extremely frightened, so she tried to grab the screwdriver appellant was holding with both of her hands and pull it away from her neck in order to feel a little safer. Meanwhile, the pharmacy technician collected the drugs and put them in bags as directed by appellant. The pharmacist indicated appellant took the bags and did not let go of her hair until he was about to leave. At that time, he demanded the money from the cash register. She gave him the money, and he left. The pharmacist testified she and the pharmacy technician then locked the front door and called the police and the pharmacy's owner.

The State introduced surveillance video it obtained from the pharmacy showing the aggravated robbery. The video showed appellant entering the store, opening the swinging door that separates the area where the pharmacist is located and the entrance to the store, grabbing the pharmacist by her hair and forcefully pulling her to the back of the pharmacy. The video also shows appellant holding the pharmacist hostage with the screwdriver, while the pharmacy technician put the drugs in a bag. The video further shows the pharmacist using both of her hands to push the screwdriver away from her neck and that appellant did not let go of the pharmacist's hair and did not put the screwdriver back into his pocket until he was about to leave.

–3–

The evidence at trial establishes police responding to reports of the incident quickly spotted and apprehended appellant. Officer Moses approached appellant and told him to stop, but appellant kept walking. After the officer made further commands to stop, appellant dropped the bags containing the drugs and continued walking. Eventually, appellant stopped and put his hands up, surrendering to the officers.

Appellant testified that a man he knows only as "Big Homie" made him commit the robbery. He claimed "Big Homie" drove him to the pharmacy, put a gun to his side, and threatened to kill him if he did not commit the robbery. Appellant further claimed "Big Homie" was the man seen on video to be speaking with the pharmacist and the pharmacy technician minutes before the robbery occurred. According to appellant, "Big Homie" "cased" the pharmacy before ordering him to commit the robbery.

Appellant testified "Big Homie" gave him the screwdriver to be used to force open any locks he might encounter. Appellant acknowledged that he entered the pharmacy and demanded the drugs, held the pharmacist by the hair and at some point, took the screwdriver out of his pocket. According to appellant, he did not threaten to kill the pharmacist and he did not intend to hold the screwdriver at her neck. He claimed he explained to the pharmacists that he was not there to hurt anyone, he just wanted the promethazine and codeine. Appellant testified that after

he left the pharmacy with the drugs and cash from the register, he did not see "Big Homie" so he began walking down the street.

Officer Hogan testified that he was the arresting officer, and that appellant changed his story several times as to what had transpired, including telling him he did not go into the pharmacy and that someone met him outside and gave him the drugs.

The jury found appellant guilty of aggravated robbery. Appellant elected to have the trial court assess punishment. During the punishment phase, the State presented evidence of appellant's criminal history, including two prior felony convictions, specifically unlawful possession with intent to deliver a controlled substance and aggravated assault of his ex-girlfriend with a deadly weapon (a knife).[1] These prior felony convictions would enhance the punishment range for the charged offense to 25 to 99 years or life in prison. PENAL § 12.42(d). At the conclusion of the punishment phase, the trial court noted that appellant's criminal history started at the age of 21 and continued to the age of 46, that he was a drug addict, that he had not taken ownership of his actions, and blamed others for his poor decisions. The trial court found the enhancement paragraphs to be true and

---

[1] The State also established appellant assaulted his ex-girlfriend while he was on probation for misdemeanor assault family violence against her—by forcing her against a couch and striking her with a shower curtain rod. In addition, the State established appellant was revoked from probation and convicted of forgery in 2007. And in 2017, appellant was convicted of possession of cocaine.

sentenced appellant to 40 years' confinement in the Texas Department of Criminal Justice. This appeal followed.

**DISCUSSION**

## I. Aggravated Robbery

In his first issue, appellant urges the evidence is legally insufficient to support his conviction for aggravated robbery. More particularly, appellant claims the State did not show that his use of the screwdriver rendered it a deadly weapon.

### A. Standard of Review

We review the sufficiency of the evidence under the standard set out in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013). We examine all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Matlock*, 392 S.W.3d at 667. We defer to the trier of fact's determinations of credibility and may not substitute our own judgment for that of the fact finder. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op.); *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). We resolve any inconsistencies in the testimony in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

## B. Applicable Law

A person commits robbery if, in the course of committing theft, as defined in Chapter 31 of the penal code, and with the intent to obtain or maintain control of the property, he (1) intentionally, knowingly, or recklessly causes bodily injury to another; or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. PENAL § 29.02(a). A person commits aggravated robbery if he uses or exhibits a deadly weapon during the offense. PENAL § 29.03(a)(2). A deadly weapon is defined as "(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or (B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." PENAL § 1.07(17)(A).

If the evidence does not show the weapon caused death or serious bodily injury, the State must produce evidence that shows the weapon (1) was capable of causing serious bodily injury and (2) was displayed or used in a manner that establishes the intent to use the weapon to cause serious bodily injury. *Hester v. State*, 909 S.W.2d 174, 179 (Tex. App.—Dallas 1995, no writ). Because a screwdriver is not manifestly designed to inflict serious bodily injury or death, the State was required to prove the screwdriver, in the manner of its use or intended use, was capable of causing death or serious bodily injury. *See id.* at 178–79.

We examine each case on its own facts to determine whether a rational trier of fact could have concluded from the surrounding circumstances that an instrument

–7–

was used as a deadly weapon. *Id.* at 179. We consider the defendant's verbal threats, the distance between the defendant and the victim, and the witnesses' descriptions of the weapon in determining whether a defendant intended to use the instrument as a deadly weapon. *Id.* If the weapon is introduced into evidence, the factfinder can also examine the weapon to determine if it has physical characteristics that reveal its deadly nature. *Robertson v. State*, 163 S.W.3d 730, 734 (Tex. Crim. App. 2005). In addition, when a tool is not a deadly weapon per se, it is sufficient if it is capable of causing death or serious bodily injury or is displayed in a manner conveying an express or implied threat that serious bodily injury or death will result if the aggressor is not satisfied. *See Dominique v. State*, 598 S.W.2d 285, 286 (Tex. Crim. App. 1980) (defendant holding suture scissors to victim's neck accompanied by threat to kill and slashing motions with scissors constituted deadly weapon); *see also Jones v. State*, 843 S.W.2d 92, 96–97 (Tex. App.—Dallas 1992, pet. ref'd).

**C. Analysis**

Appellant claims he brought the screwdriver inside the pharmacy to use as a tool to open locks should the need arise and contends that the screwdriver remained in his pocket throughout most of the encounter. But the evidence, including the video surveillance depicting the robbery and the testimony of the pharmacist, established otherwise. More particularly, the video showed appellant grabbed the pharmacist by the hair, forced her body around, and held the screwdriver against her neck before she was able to pull it away. Appellant was in close proximity to the

pharmacist for the majority of the encounter and she could not physically get away from him. The video further showed appellant's size, being average in height and weight, relative to that of the pharmacist, who is petite and thin. The pharmacist testified appellant made multiple threats to kill her if she failed to comply with his demands, she was in fear for her life, and thought she was going to die. Her fear was exhibited by her action of gripping the screwdriver with both hands, while appellant held same, in an attempt to keep it away from her neck. Officer Moses testified that he had 15 years' experience in law enforcement, including experience in SWAT, tactics, and weapons, and that in his experience a screwdriver can be used as a deadly weapon.

In addition to actually viewing how the robbery occurred and hearing the testimony of the pharmacist, the jury was able to view the screwdriver itself and heard Officer Moses' testimony concerning the use of same as a deadly weapon. Moreover, appellant's own testimony concerning why he did not pry the pharmacist's grip from the screwdriver further demonstrates its deadly nature. Appellant testified that "if [he] would have let go of her hair, [he] could have got it out of her hand, but [he] didn't want to take the chance of her getting ahold [of] the screwdriver and sticking [him] with it." Thus, appellant acknowledged the instrument was capable of penetrating the human body—though his concern was limited to its use against himself.

Having examined all of the evidence in the light most favorable to the jury's deadly weapon finding, we conclude any rational trier of fact could have found the screwdriver appellant displayed, and the manner in which he did so, during the robbery was capable of causing serious bodily injury or death, such as piercing the pharmacist's throat or eye. *See, e.g.*, *Henderson v. State*, 971 S.W.2d 755, 757 (Tex. App.—Houston [14th Dist.] 1998, no pet.) (screwdriver as used was deadly weapon where defendant displayed same and thereafter victim followed every order). Accordingly, we overrule appellant's first issue.

## II. Duress

In his second issue, appellant urges there is legally and factually insufficient evidence to support the jury's rejection of his affirmative defense of duress.

### A. Standard of Review

We review affirmative defenses for both legal and factual sufficiency. *Butcher v. State*, 454 S.W.3d 13, 20 (Tex. Crim. App. 2015). In reviewing the legal sufficiency of the evidence to support a jury's rejection of an affirmative defense in which the defendant has the burden of proof, we first look for evidence favorable to the jury's negative finding. *Matlock v. State*, 392 S.W.3d 662, 670 (Tex. Crim. App. 2013). When we review the record for favorable evidence, we disregard all contrary evidence unless a reasonable factfinder could not. *Id.* Only if the affirmative defense was conclusively proven may we conclude that the evidence is legally insufficient to support the jury's rejection of the affirmative defense. *Id.*

In reviewing the factual sufficiency of the evidence to support a jury's rejection of an affirmative defense in which the defendant has the burden of proof, we review the evidence in a neutral light and determine whether the finding is so against the great weight and preponderance of the evidence so as to be manifestly unjust. *Id.* at 671. When conducting a review for legal or factual sufficiency, we defer to the factfinder's determination of the weight and credibility to give the testimony and the evidence presented at trial. *Id.* at 669–70.

## B. Applicable Law

Duress is an affirmative defense to prosecution that excuses the conduct of the accused that would otherwise expose him to criminal responsibility. PENAL § 2.04(d), 8.05. To establish this affirmative defense, appellant was required to prove by a preponderance of the evidence that he committed the offense because he was compelled to do so by threat of imminent death or serious bodily injury to himself or another. *Id.* § 8.05(a). A threat is imminent when (1) the person making the threat intends and is prepared to carry out the threat immediately, and (2) the threat is predicated on the threatened person's failure to commit the charged offense immediately. *Bryant v. State*, No. 05-16-01448-CR, 2018 WL 2382104, at *4 (Tex. App.—Dallas May 25, 2018, no pet.) (mem. op., not designated for publication) (citing *Cormier v. State*, 540 S.W.3d 185, 190 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd)).

### C. Analysis

Appellant himself admitted that he did not tell the pharmacist or the pharmacy technician that he was being threatened or coerced, did not ask them for a phone to seek help, did not ask them if there was a back door to the pharmacy through which he could leave without being detected, did not see "Big Homie" when he exited the pharmacy laden with purloined controlled substances, and did not try to make any effort to return the drugs and cash when it was apparent the man he claimed threatened him was not there and any alleged imminent harm, if it once existed, was no longer present. Consequently, the record does not conclusively prove appellant's affirmative defense and the evidence is legally sufficient to support the jury's negative finding on the issue of duress.

The only evidence of appellant's claim he acted under duress was his own testimony, which the jury was free to disbelieve. *See Brooks*, 323 S.W.3d at 899. During appellant's testimony, the State impeached appellant's credibility with his prior convictions for aggravated assault with a deadly weapon and assault family violence. The State also impeached appellant's credibility with the testimony of Officer Hogan. Officer Hogan testified appellant lied to him stating he did not even go into the pharmacy and further indicated appellant changed his story several times. Although appellant testified that the man seen in one of the video's was "Big Homie," the jury was free to reject appellant's assertion "Big Homie" actually existed and threatened appellant. The video does not show appellant interacting with

–12–

the man he claimed to be "Big Homie." The fact that appellant did not tell the pharmacist or the pharmacy technician that he was in danger or otherwise seek protection from the alleged threats of "Big Homie" when he had the opportunity to do so also undermines appellant's claim he acted under duress. We conclude the jury's rejection of appellant's claim of duress was not manifestly unjust and there is factually sufficient evidence to support the jury's finding against him in this regard.

We overrule appellant's second issue.

## III. Sentence Imposed

In his final issue, appellant urges the sentence imposed against him is constitutionally excessive given the nature and circumstances of the offense. The State responds that appellant failed to preserve this challenge for appellate review and alternatively, the sentence is not unconstitutionally excessive.

### A. Preservation of Complaint

Before a party may present a complaint for appellate review, the record must normally show that the complaint was made to the trial court. TEX. R. APP. P. 33.1. Constitutional rights, including the right to be free from cruel and unusual punishment, may be waived. *Rhoades v. State*, 934 S.W.2d 113, 120 (Tex. Crim. App. 1996). Appellant did not object when he was sentenced, nor did he file motions for new trial addressing this complaint. Accordingly, he has not preserved the issue for appellate review. *See Curry v. State*, 910 S.W.2d 490, 496 (Tex. Crim. App. 1995); *Castaneda v. State*, 135 S.W.3d 719, 723 (Tex. App.—Dallas 2003, no pet.).

**B. Applicable Law**

Moreover, appellant's claim of disproportionate punishment would fail even if it had been preserved below. To be sure, the basic concept of proportionality is embodied within the Eighth Amendment's proscription on cruel and unusual punishment. U.S. CONST. amend. VIII; *State v. Simpson*, 488 S.W.3d 318, 322 (Tex. Crim. App. 2016). This is a "narrow principle," however, that does not compel any arithmetic proportionality between the crime and the sentence imposed. *Simpson*, 488 S.W.3d at 322 (citing *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring)). Rather, it forbids only those extreme sentences that are so "grossly disproportionate" to the crime as to amount to cruel and unusual punishment. *Id.* A sentence is grossly disproportionate to the crime "only in the exceedingly rare or extreme case." *Id.* at 322–23.

Generally, a punishment within the statutory limits will not be excessive, cruel, or unusual in any given case. *Id.* at 323. To determine whether a particular sentence is "grossly disproportionate," we first consider the severity of the sentence in light of the harm caused or threatened to the victim or victims, the culpability of the offender, and the offender's prior misconduct. *Id.* In the rare case in which this threshold comparison leads to an inference of gross disproportionality, we would then compare the defendant's sentence with the sentences of other, similarly situated offenders in Texas and with the sentences imposed for the same or analogous crime in other jurisdictions. *Id.* If this comparative analysis validates an initial judgment

–14–

that the sentence is grossly disproportionate, the sentence is indeed cruel and unusual. *Id.*

**C. Analysis**

Appellant claims because no one was harmed during the commission of the offense, and given appellant feared for his life and peacefully surrendered to law enforcement officers, the extent of his sentence far exceeds the crime committed.

As an initial matter, we note that appellant's 40-year sentence is within the statutory punishment range for the offense of aggravated robbery enhanced by two prior felony convictions. PENAL § 12.42(d). The Court of Criminal Appeals has traditionally held that punishment assessed within the statutory limits, including punishment enhanced pursuant to a habitual-offender statute, is not excessive, cruel, or unusual. *Simpson*, 488 S.W.3d at 323. Thus, the sentence imposed against appellant was not unconstitutionally excessive. *See Castaneda*, 135 S.W.3d at 725 (holding Castaneda's Eighth Amendment complaint failed because punishment was within statutory range, and he failed to show his sentence was disproportionate to others').

While appellant contends his sentence is grossly disproportionate because no one was harmed during the commission of the crime, he committed the crime only under duress, and he quickly and peacefully surrendered when confronted by law enforcement, he fails to acknowledge his prior misconduct spanning more than twenty years, the violent nature of his conduct, the trauma and the risk of serious

–15–

physical harm or death he inflicted on the pharmacist and his failure to take responsibility for his decisions and actions, all of which are factors the trial court appropriately took into consideration in imposing appellant's sentence. After careful scrutiny of the record, we do not find appellant's sentence to support an inference of gross disproportionality.

We overrule appellant's third issue.

## CONCLUSION

We affirm the trial court's judgment.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

DO NOT PUBLISH
TEX. R. APP. P. 47

210363F.U05

–16–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

RICKY L JOHNSON, Appellant

No. 05-21-00363-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 199th Judicial District Court, Collin County, Texas
Trial Court Cause No. 199-83409-2020.
Opinion delivered by Justice Schenck. Justices Osborne and Smith participating.


Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 21st day of July, 2022.