

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-20-00096-CR

Ricky **CANTU**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 175th Judicial District Court, Bexar County, Texas
Trial Court No. 2018CR5992
Honorable Catherine Torres-Stahl, Judge Presiding

Opinion by: Patricia O. Alvarez, Justice

Sitting: Patricia O. Alvarez, Justice
Irene Rios, Justice
Beth Watkins, Justice

Delivered and Filed: August 18, 2021

AFFIRMED

After the State presented evidence that Appellant Ricky Cantu, a repetitive DWI offender, drove while intoxicated and caused a collision with Rudy Borrego, who died as a result, a Bexar County jury found Cantu guilty. Cantu was sentenced to forty years in prison. On appeal, Cantu raises several issues, arguing that (1) the evidence was legally insufficient to establish that Cantu committed an act clearly dangerous to human life in the course of driving while intoxicated, or to support the inferences the jury made to convict him; (2) the trial court committed charge error by failing to include the definition of "omission" in the jury charge; and (3) the evidence was legally

insufficient to establish that Cantu's actions rather than Borrego's actions caused Borrego's death. We affirm the trial court's judgment.

## BACKGROUND

On February 24, 2018, Cantu was driving eastbound on Laredo Street in San Antonio. A motorcyclist was driving westbound. A witness driving behind Cantu noted that Cantu was driving extremely slowly, about fifteen miles per hour, and weaving in and out of his lane. He remarked to his wife that the driver must be falling asleep or drunk. The witness watched as Cantu swung to the right and then back to the left in a wide, slow left turn into a gas station. Before Cantu cleared the lane of oncoming traffic, the witness heard an impact, and then he saw a motorcycle under Cantu's truck. The witness got out of his car to check on the motorcyclist, but the motorcyclist was unconscious. The witness tried to tell the motorcyclist that he had called 911 and emergency responders were enroute, but the motorcyclist remained unresponsive. The witness saw Cantu get out of his truck shaking his head, but Cantu did not look at the motorcyclist under his truck. A clerk at the gas station heard the crash and saw Cantu get out of his truck. She observed that he looked shocked, but she did not approach the scene.

When police arrived and spoke to Cantu, Cantu reported that the motorcyclist was coming out of the gas station without his headlamp on and that they hit each other. But the investigation revealed that the motorcyclist was driving about forty-five miles per hour west on Laredo Street with his headlamp on when Cantu turned in front of him. At trial, the State's reconstructionist explained that, as Cantu made a left turn in front of the motorcyclist, the motorcyclist braked and laid the motorcycle on the ground to avoid colliding against the truck but nonetheless slid underneath Cantu's truck. As a result, the motorcyclist, later identified as Rudy Borrego, died.

At the scene, Cantu exhibited red, glassy eyes, he slurred his speech, and he emitted an odor of intoxicants from his breath. He submitted to the investigating officer's horizontal gaze

nystagmus test, from which the officer observed four out of six cues of possible impairment. Cantu refused any further field sobriety tests. The officer arrested Cantu and read him the statutory advisory informing him that he was obligated to provide a breath or blood sample for alcohol testing. Cantu refused, and the officer obtained a warrant for the sample. The officer then took Cantu to a nurse's station for a blood draw. Cantu's blood sample revealed a blood alcohol concentration of .21. Cantu now appeals.

**LEGAL SUFFICIENCY**

**A.      Parties' Arguments**

Cantu argues that the evidence against him was legally insufficient to establish that he committed an act clearly dangerous to human life while driving intoxicated, and that the evidence did not support the inferences necessary for the jury to convict him. Cantu further argues that Borrego's actions, not Cantu's own actions, caused Borrego's death. The State argues that the evidence against Cantu was legally sufficient to establish that he committed felony murder and that his convictions should be affirmed.

**B.      Standard of Review**

When determining whether there is sufficient evidence to support a conviction, the reviewing court "consider[s] the combined and cumulative force of all admitted evidence in the light most favorable to the verdict to determine whether, based on that evidence and the reasonable inferences therefrom, a jury was rationally justified in finding guilt beyond a reasonable doubt." *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)); *accord Brooks v. State*, 323 S.W.3d 893, 894 (Tex. Crim. App. 2010). "Because the jury is the sole judge of the credibility of witnesses and of the weight given to their testimony, any conflicts or inconsistencies in the evidence are resolved in favor of the verdict." *Espino-Cruz v. State*, 586 S.W.3d 538, 543 (Tex. App.—Houston [14th Dist.] 2019, pet. ref'd)

(citing *Jackson v. State*, 530 S.W.3d 738, 741–42 (Tex. App.—Houston [14th Dist.] 2017, no pet.)). "The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt." *Gamelin v. State*, No. 14-08-00977-CR, 2010 WL 1037944, at *2 (Tex. App.—Houston [14th Dist.] Mar. 23, 2010, no pet.) (citing *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991)).

### C.       Applicable Law

For the jury to convict Cantu of a felony murder, the jurors had to agree that Cantu committed an act clearly dangerous to human life, which the State identified as a failure to keep a proper lookout, and/or failure to yield the right of way, and/or turning in front of Borrego and causing him to crash into Cantu. *See* TEX. PENAL CODE ANN. § 19.02; *Alami v. State*, 333 S.W.3d 881, 888 (Tex. App.—Fort Worth 2011, no pet.). The jury also had to agree that Cantu's dangerous act caused Borrego's death. *See* TEX. PENAL CODE ANN. § 19.02; *Fraser v. State*, 593 S.W.3d 883, 890 (Tex. App.—Amarillo 2019, pet. ref'd).

**An Act Clearly Dangerous to Human Life—Affirmative Act**

"The felony murder statute makes clear that an 'act clearly dangerous to human life' must be the cause of the death of the victim." *Rodriguez v. State*, 454 S.W.3d 503, 507 (Tex. Crim. App. 2014) (citing TEX. PENAL CODE ANN. § 19.02(b)(3)). A failure to act, i.e., an omission, will not satisfy a felony murder charge. *See id.* (citing TEX. PENAL CODE ANN. § 1.07(a)(34)). But in some circumstances, omissions may be regarded or described as voluntary acts. *McGuire v. State*, 493 S.W.3d 177, 190 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (distinguishing *Rodriguez*, 454 S.W.3d 503). Specifically, since Texas law imposes a duty on drivers to keep a proper lookout and yield to oncoming traffic,[1] driving in such a way that disregards these duties can be described

---

[1] *See, e.g.*, TEX. TRANSP. CODE ANN. § 545.103 (Safely Turning); *McGuire*, 493 S.W.3d at 190.

as an affirmative act. *McGuire v. State*, No. 01-11-01089-CR, 2012 WL 344952, at *2 (Tex. App.—Houston [1st Dist.] Feb. 2, 2012, pet. ref'd) (mem. op., not designated for publication) (citing *Lomax v. State*, 233 S.W.3d 302, 304 n.5 (Tex. Crim. App. 2007)); *see also Schmidt v. State*, No. 09-09-00149-CR, 2010 WL 4354027, at *6 (Tex. App.—Beaumont Nov. 3, 2010, no pet.) (mem. op., not designated for publication) (affirming conviction in DWI murder case in which Appellant failed to yield to a motorcycle by turning left in front of it thereby causing the motorcycle to crash). In other words, failing to yield constitutes an act rather than a non-act. *See McGuire*, 493 S.W.3d at 190. In *McGuire*, the court explained how failing to maintain a proper lookout, as an example, constituted an act in contrast to the non-acts described in *Rodriguez*:

> Unlike the omissions in the *Rodriguez* indictment, the omissions in the McGuire indictment could be regarded, in some circumstances, as voluntary acts. For example, if the facts supported the statement, the indictment could have alleged that McGuire failed to maintain a proper lookout because he was texting or looking at the floorboard for something he had dropped. These clearly would be acts.

*McGuire*, 493 S.W.3d at 190. In *Rodriguez*, the omissions included not feeding a child enough food, not providing a child with a coat in the winter, and not taking a child to the hospital to treat an injury—true non-acts, distinguishable from failing to yield or to keep a proper lookout. *Compare Rodriguez*, 454 S.W.3d at 508, *with McGuire*, 493 S.W.3d at 190. Accordingly, for felony murder DWI cases in which the State has described the defendant's dangerous act as a "failure to yield" or a "failure to keep a proper lookout," a conviction my be affirmed if the evidence supports the allegation, despite the use of the word "failure." *See, e.g., Lomax*, 233 S.W.3d at 304 n. 5; *McGuire*, 493 S.W.3d at 190.

## An Act Clearly Dangerous to Human Life—Unsafe Turn

Under Texas transportation law, "[a]n operator may not turn the vehicle to enter a private road or driveway, otherwise turn the vehicle from a direct course, or move right or left on a

roadway unless movement can be made safely." TEX. TRANSP. CODE ANN. § 545.103. "'Safely' means, 'free from harm or risk,' 'secure from threat of danger, harm, or loss, or 'affording safety or security from danger, risk, or difficulty.'" *Leming v. State*, 493 S.W.3d 552, 568 (Tex. Crim. App. 2016) (citing Merriam-Webster's Collegiate Dictionary 914 (10th ed. 1997)); *cf. Schmidt*, No. 09-09-00149-CR, 2010 WL 4354027 (affirming judgment of guilt where the appellant failed to yield by making an unsafe turn in front of a motorcyclist and caused a fatal collision). In the context of repetitive DWI felony murder, such an act is not attached to and does not require proof of any statutorily assigned mens rea, such as negligence. *See* TEX. PENAL CODE ANN. § 19.02; *Lomax*, 233 S.W.3d at 304–05 (citing *Aguirre v. State*, 22 S.W.3d 463, 470 (Tex. Crim. App. 1999)).

**D.     Analysis**

Cantu specifically complains that the State's evidence was insufficient to establish that he committed an act dangerous to human life for two reasons: 1) if he was negligent and erred by turning left in front of Borrego, his error was too commonplace to be criminal, and 2) he could not have committed a criminal act at all because the State alleged an omission, rather than an act, which does not comport with the definition of felony murder. We reject these arguments.

First, because repetitive DWI felony murder does not contemplate mens rea, Cantu was not charged criminally due to any alleged negligence. Rather, Cantu was indicted for felony murder because he executed an unsafe left turn in front of Borrego, causing a collision that killed Borrego, in the course and furtherance of committing a repetitive DWI offense. Next, the State posited three ways in which Cantu committed an act dangerous to human life, all of which met the criteria for an affirmative voluntary act. Turning left in front of oncoming traffic when it is unsafe to do so, like failing to keep a proper lookout and failing to yield, can be deadly, as it was in this case.

Borrego was less than two hundred feet from Cantu when Cantu turned. The State's reconstructionist explained that Borrego exhibited normal reaction time in braking after Cantu turned in front of him and that Cantu had simply not afforded Borrego the time, distance, and opportunity to avoid colliding with him. In viewing the evidence in the light most favorable to the verdict, we note that the jury could reasonably have given more weight to the testimony of the State's reconstructionist, who testified that Cantu caused the crash with Borrego by turning left when it was unsafe to do so, over the defense expert who opined that Borrego caused his own death by failing to avoid a collision. This is so despite Cantu's contentions that Borrego caused his own death by exceeding the speed limit in a construction zone, not wearing a helmet, failing to maneuver around Cantu's truck, and sliding rather than simply braking. We acknowledge that Borrego had a duty to avoid colliding with Cantu if he could,[2] but the evidence showed that Borrego tried to avoid the collision by braking and laying his bike down. Based on the evidence, the jury could have concluded that a reasonable person would not have turned left when Cantu did and that Cantu's turn was "the thing that put it all in motion," i.e., the proximate cause[3] of Cantu's death.

We overrule Cantu's sufficiency arguments and next address his jury charge issue.

JURY CHARGE

A. Parties' Arguments

Cantu argues that the State's indictment alleged an omission rather than an act when it described his criminal conduct as "failure to yield" and "failure to keep a proper lookout." Consequently, he argues that "omission" should have been defined in the jury charge and that its

---

[2] *See Madara v. Marshall*, 578 S.W.2d 787, 792 (Tex. Civ. App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.).
[3] *See Romero v. State*, No. 08-10-00074-CR, 2012 WL 3834917, at *2 (Tex. App.—El Paso Sept. 5, 2012, pet. ref'd) (mem. op., not designated for publication).

exclusion caused egregious harm. The State responds that the definition of "omission" was not relevant law to the case and would have confused the jury.

**B.      Standard of Review**

"Our first duty in analyzing a jury-charge issue is to decide whether error exists." *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005) (citing *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003)). If we find error, then we consider whether to reverse based on the resultant harm. *Gonzalez v. State*, 610 S.W.3d 22, 27 (Tex. Crim. App. 2020) (citing *Jordan v. State*, 593 S.W.3d 340, 346 (Tex. Crim. App. 2020)); *see also Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g).

**C.      Applicable Law**

Under Texas Code of Criminal Procedure article 36.14, the trial court must provide a written charge to the jury containing the law applicable to the case. *See* TEX. CODE CRIM. PROC. ANN. art. 36.14; *Fraser*, 593 S.W.3d at 887. "The 'law applicable to the case' includes the statutory definitions that affect the meaning of the elements of the offense." *Cormier v. State*, 540 S.W.3d 185, 189 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (citing *Ouellette v. State*, 353 S.W.3d 868, 870 (Tex. Crim. App. 2011)). But "it does not necessarily follow that a trial court has a duty to sua sponte instruct the jury on [a defensive] issue when the defendant does not request such an instruction." *Posey v. State*, 966 S.W.2d 57, 62 (Tex. Crim. App. 1998); *accord Rios v. State*, 990 S.W.2d 382, 384 (Tex. App.—Amarillo 1999, no pet.).

**D.      Analysis**

For repetitive DWI felony murder, the word "omission" does not appear in the relevant statutes. *See* TEX. PENAL CODE ANN. §§ 19.02, 49.04, 49.09. Its significance as a foil to the word "act" is a defensive issue. Furthermore, Cantu did not request a definition of "omission" be included in the jury instruction at trial, and he did not argue in closing that "failure to yield" or

"failure to keep a proper lookout" was something other than an act. We agree with the State that including the definition of "omission" would have been confusing to the jury; the term appeared nowhere in trial. Without some indication in the record that it was essential or at least relevant to the case, we do not agree that the definition of "omission" was "law applicable to the case" without a defense request to include it. We overrule Cantu's complaint on this point.

## CONCLUSION

We conclude that the evidence was legally sufficient to establish that Cantu committed an act clearly dangerous to human life that caused the death of Borrego in the course and furtherance of committing felony DWI. We also conclude that the trial court did not err by failing to sua sponte include the definition of the word "omission" in the jury instructions.

We overrule Cantu's issues on appeal and affirm the judgment of the trial court.

Patricia O. Alvarez, Justice

DO NOT PUBLISH